UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

ZAI YOU ZHU and XIAO CHENG,

                Plaintiffs,

    -against-                                 **MEMORANDUM AND ORDER**
                                                    17 CV 3521 (CLP)

MEO JAPANESE GRILL AND SUSHI, INC.,
*et al.*,

                Defendants.
-----------------------------------------------------------X

**POLLAK**, United States Magistrate Judge:

On June 12, 2017, Zai You Zhu and Xiao Cheng filed a complaint on behalf of themselves and all others similarly situated against Meo Japanese Grill and Sushi, Inc., Rafael Kasaev, Michael Musheyev, and Hananya Aranbaiev (collectively, "defendants") alleging violations of the FLSA and the NYLL. Specifically, they claim that defendants illegally took away their tips, failed to record hours or to furnish paystubs, and failed to compensate them for overtime. (Compl.[1] ¶¶ 35-37). They also alleged violations of New York General Business Law § 349, claiming that defendants engaged in deceptive acts and practices by willfully filing fraudulent information in respect to their payments to plaintiff. (Id. ¶¶ 103-06).

On January 8, 2021, plaintiffs Zhu and Cheng ("plaintiffs"), together with defendants, filed a joint motion for settlement approval. (Initial Agr.[2]). A fairness hearing pursuant to Cheeks v. Freeport Pancake House, 796 F.3d 199 (2d Cir. 2015), was held on January 15, 2021, during which the Court denied approval because of the proposed non-disparagement clause and

---

[1] Citations to "Compl." refer to the Complaint, filed June 12, 2017, ECF No. 1.
[2] Citations to "Initial Agr." refer to the First Settlement Agreement, filed January 8, 2021, ECF No. 50.

broad general release, which released defendants from claims unrelated to the NYLL or FLSA. (See Electronic Minute Entry, dated Jan. 15, 2021).

On March 24, 2021, defendants and plaintiffs resubmitted their joint motion for settlement with revisions to the non-disparagement clause ("Amended Agreement"), which contained an exception for truthful statements in the context of any legal proceeding. (Am. Sett. Agr.[3] ¶ 5). Although the parties continued to insist that the general release was proper, defendants noted that they would be willing to agree to a mutual general release. The Court denied approval on June 29, 2021, stating that although mutual general releases can be acceptable, the Amended Agreement still contained the general release as limited to plaintiff. (See 6/29/2021 Order[4] at 5). Further, the exception for truthful statements in the context of any legal proceedings would have been rendered a nullity by the general release; if plaintiffs could not bring any action against defendants, they would be unable to make any statements regarding the action. (See id. at 5-7). As such, this Court ordered the parties to either revise the agreement or otherwise provide a status report regarding the case. (Id. at 3).

On August 30, 2021, the parties filed a third motion for settlement ("Final Agreement") with revisions to the two clauses at issue. (Final Sett. Agr.[5]). The parties have consented to this Court's jurisdiction to determine the fairness of the proposed settlement of this matter.[6] This Court held a fairness hearing on October 1, 2021 at 3:45 p.m.

---

[3] Citations to "Am. Sett. Agr." refer to the Amended Settlement Agreement, filed March 24, 2021, ECF No. 51.
[4] Citations to "6/29/2021 Order" refer to this Court's Order, filed June 29, 2021, ECF No. 55.
[5] Citations to "Final Sett. Agr." refer to the operative Settlement Agreement, filed August 30, 2021, ECF No. 57-1.
[6] See Consent to Magistrate Judge Disposition, endorsed by the Honorable LaShann DeArcy Hall on September 1, 2021, ECF No. 59.

For the reasons set forth in this Order, the Court approves the parties' settlement as fair and reasonable and approves plaintiffs' request for attorney's fees.

FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, plaintiffs Zai You Zhu ("Zhu") and Xiao Cheng ("Cheng") were employed by defendant Meo Japanese Grill and Sushi Inc. ("Meo"), from September 1, 2016 and August 21, 2016, respectively, until June 12, 2017. (See Compl. ¶¶ 8-9; Pl. Damage Calc.[7] at 2, 6). Plaintiffs worked as chefs at Meo. (Compl. ¶¶ 24, 30). Plaintiffs allege that defendants Rafael Kasaev, Michael Musheyev, and Hananya Aranbaiev ("individual defendants") are the owners, officers, and/or directors of Meo and that each of them participated in the day-to-day operations and made all business decisions including those regarding salary and scheduling during plaintiffs' time at Meo. (Id. ¶¶ 12-17). The defendants are alleged to have "knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation and spread-of-hours premiums, and failed to provide them with a wage notice at the time of hiring." (Id. ¶ 20).

From September 1, 2016, to October 1, 2016, plaintiff Zhu is alleged to have worked five days per week, Sunday to Thursday, from 1 p.m. to 12:30 a.m., Monday through Thursday, and from 12 p.m. to 12:30 a.m. on Sunday. Plaintiff Zhu notes that he often actually worked until 2 a.m. rather than until 12:30 a.m. as he was scheduled. As a result, Zhu worked "between 58.5 to 66 hours per week." (Id. ¶ 25). From October 2, 2016 to December 20, 2016, he alleges that he worked the same hours, with the addition of a shift on Saturday from "between 7 pm to 9pm depending on Shabbat Candle-Lighting Times, and worked until 12:30am but frequently up to 1:00am." (Id. ¶ 26). Thus, he worked between 64 and 72 hours per week during this time. (Id.)

---

[7] Citations to "Pl. Damage Calc." refer to Plaintiffs' Damage Calculation, filed August 30, 2021, ECF No. 57-4.

Plaintiff Cheng alleges the same hours, although he began working on August 21, 2016. (Id. ¶¶ 31-32).

From December 21, 2016 to June 12, 2017, Zhu alleges that he worked five days per week with Wednesday and Friday off. (Id. ¶ 27). His weekend hours remained the same, but on Monday and Tuesday he worked from 2 p.m. to 12:30 a.m., and on Thursday he worked from 12 p.m. to 12:30 a.m. (Id.) Plaintiff Cheng alleges the same hours. (Id. ¶ 33). As a result, both plaintiffs worked between 51.8 and 58 hours per week. (Id. ¶¶ 27, 33). Both plaintiffs argue that they were often required to work additional time, ranging from 30 minutes to an hour and a half. (Id. ¶¶ 27, 33).

Plaintiff Zhu's compensation was allegedly calculated based on a daily rate of $200, "paid half in both cash and check." (Id. ¶ 28). He allegedly received $50 per week in tips, but argues that he should have received an additional $300 pursuant to the tip policy, whereby 15% of all tips to servers should have been distributed to plaintiffs. (Id. ¶ 29). Plaintiff Cheng states that he received $200 per day from the time he started until April 1, 2017, when he was given a raise of $25 per day. (Id. ¶ 34). Cheng allegedly received $100 in tips per week; he also argues that he should have received an additional $300 per week.[8] (Id. ¶ 35).

Based on this information, plaintiffs argue that defendants did not compensate plaintiffs for overtime hours and shifts that last longer than ten hours per week, nor did they provide plaintiffs with wage notices at the time of hiring. (Id. ¶¶ 37-39). Plaintiffs stated that they brought the action on behalf of a class of individuals who were subject to similar practices and

---

[8] Although the Complaint states that Plaintiff Cheng should have received an "average of $600 per week" (Compl. ¶ 35), this Court believes that this number is a typographical error, particularly as both plaintiffs worked very similar hours.

4

policies by defendants. (Id. ¶ 47-48). However, plaintiffs were never certified as a class, although the parties stipulated to conditional certification on March 7, 2019. (See ECF No. 28).

On November 15, 2019, the parties informed this Court that they had reached a settlement in principle. (See ECF No. 38). On December 10, 2020, the parties filed a joint notice that set out the amount of the settlement as well as the payment plan. (See ECF No. 49). The parties subsequently filed two motions for Cheeks review, both of which were denied by this Court. (See Initial Agr.; Am. Sett. Agr.; 6/29/2021 Order). Now before this Court is the parties' third motion for settlement approval. (See Final Sett. Agr.; Joint Mot.[9]).

## DISCUSSION

I.     Legal Standards

In considering whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation")). Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the

---

[9] Citations to "Joint Mot." refer to the parties' Joint Letter Motion for Settlement Approval, filed August 30, 2021, ECF No. 57.

possibility of fraud or collusion.

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from Wolinsky).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)). "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable." Id. at 606. Rather, if the court finds one or more provisions of a FLSA settlement agreement to be unreasonable, the Court must reject the proposed settlement. See id. at 605.

## II.    Settlement Terms

Previously, this Court only took issue with two provisions of the Amended Agreement. (See 6/29/2021 Order). For the reasons set forth below, the Court now finds that the two provisions at issue, the mutual general release and the non-disparagement clause, are acceptable. Further, the Court notes that the Final Agreement does not contain any specific confidentiality clause, which has previously been rejected. See Lopez v. Bell Blvd Bakery LLC, No. 15 CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016), report and recommendation adopted, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016). As such, the Court finds that the Final Agreement no longer contains any impermissible clauses and comports fully with Cheeks.

### A. Revised Mutual General Release

Courts in this Circuit routinely reject broad releases in FLSA cases of "unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). Judges in two recent cases have ruled that settlements in FLSA cases cannot release the defendant from non-FLSA claims. "The case law is clear that 'any release provision must be limited to the claims at issue in this action.'" Grullon v. Justin Pharmacy Inc., No. 20 CV 6122, 2021 WL 76386, at *2 (S.D.N.Y. Jan. 8, 2021). Similarly, an "employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA." Guerra-Alonso v. West 54 Deli, Corp., No. 14 CV 7247, 2015 WL 3777403, at *2 (S.D.N.Y. May 22, 2015) (alternations in original) (citation omitted).

However, in Strauss v. Little Fish Corporation, the court held that settlement agreements that release both sides from non-FLSA claims are acceptable when the agreement "was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." No. 19 CV 10158, 2020 WL 4041511, at *5 (S.D.N.Y. July 17, 2020) (collecting cases). The same language had been used to approve a mutual general release in Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13 CV 5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016). There, "the Court conclude[d] that the mutual releases of claims in the Settlement are fair and reasonable, and do not run afoul of the FLSA's purpose of preventing abuse by employers. Specifically, the Court is satisfied that the Settlement, including the release of non-FLSA claims, was the fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel." Id.

Further, courts have approved these types of releases when collective action concerns are irrelevant: "[the court] was satisfied with a mutual general release because it was negotiated by competent counsel, no motion for class/collective certification was filed, and it only bound the plaintiffs explicitly named in the agreement." Weng v. T&W Rest., Inc., No. 15 CV 8167, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016); Souza v. 65 St. Marks Bistro, No. 15 CV 327, 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015) (noting that in a non-class FLSA settlement, the individual employees are "much more likely to know what other potential claims they have against the employer").

Finally, judges have ruled that in the absence of a continued employment relationship, mutual general releases are acceptable. In Plizga v. Little Poland Restaurant, a mutual general release was approved because "the plaintiff . . . is no longer an employee of the defendants, eliminating the danger that the release was obtained through improper job-related pressure." Plizga v. Little Poland Rest. Inc., No. 15 CV 8820, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016). Similarly, the court in Souza v. 65 St. Mark's Bistro ruled that because the plaintiff no longer relied on defendants for employment, a mutual general release would provide helpful closure for both parties: "A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes. It is just as necessary for employees to obtain a release from the employer in these circumstances, otherwise they could still face the threat of litigation." No. 15 CV 327, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015).

The parties have now revised the Amended Agreement, which contained only a general release for plaintiffs, to a mutual general release. (See Final Sett. Agr. ¶¶ 3-4 (setting out releases of "All Claims by Defendants Against Plaintiffs" and "All Claims by Plaintiffs Against

8

Defendants")). As stated in this Court's June 29, 2021 Order, several factors militate in favor of allowing the mutual general release in this case: negotiations were fair due to the involvement of a professional mediator and experienced plaintiffs' counsel; the settlement only binds plaintiffs Zhu and Cheng; and there is no ongoing relationship between the defendants and plaintiffs. (See 6/29/2021 Order at 3-5). As such, this Court finds that the mutual general release in this case is acceptable.

B. Revised Non-Disparagement Clause

Courts in this Circuit have routinely found that because non-disparagement clauses "typically contravene the nature of the FLSA," they are only acceptable when they contain exceptions for truthful statements about the litigation process. The court in Lazaro-Garcia v. Sengupta Food Services held that when plaintiffs are barred from making any negative statements about defendants, the agreement "must include a carve-out for truthful statements about plaintiffs' experience litigating their case." No. 15 CV 4259, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015) (citing Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d at 180 n.65). By contrast, non-disparagement clauses that contain carve-outs for "truthful statements made by any of the Parties regarding their experiences in the Litigation and/or the underlying facts of any claim or defense" have been approved in this Circuit. Ramos Pelico v. PGNV, LLC, No. 18 CV 9761, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019).

Previously, the Amended Agreement stated only that plaintiffs were allowed to make truthful statements in the context of a legal proceeding. (See 6/29/2021 Order at 5). However, courts have rejected such a provision previously, see Rios Lopez v. Blue WP, Inc., No. 18 CV 11360, 2020 WL 8991785, at *1 (S.D.N.Y. May 22, 2020), and this Court was troubled by the fact that the mutual release would prevent *any* subsequent legal proceeding, thereby rendering

9

the carve-out a nullity. (6/29/2021 Order at 6-7). The Settlement Agreement provides that plaintiffs may not make statements that "would or might reasonably be interpreted as harmful or disparaging to the Defendants." (Final Sett. Agr. ¶ 6). Importantly, the Agreement also states that the parties are not precluded from "making truthful statements . . . regarding their expertise in the Lawsuit and/or the underlying facts of any claim or defense." (Id.) Such a provision is nearly identical to those that courts have approved of in the past. See Ramos Pelico v. PGNV, LLC, 2019 WL 2710176, at *3; Lazaro-Garcia v. Sengupta Food Services, 2015 WL 9162701, at *3. This Court therefore approves of the non-disparagement clause as amended.

III. Settlement Amount

The settlement amount was reached after "extensive negotiations" between the parties' attorneys. (Joint Mot. at 2). Plaintiffs will receive a total of $42,000. (Final Sett. Agr. ¶ 2(a)). Of that, $27,298.67 will go directly to the plaintiffs, with Zhu receiving $11,011.83 and Cheng receiving $16,286.85. (Id.) Plaintiffs argue that, should they prevail on all of their claims, they would be entitled to $293,400.85. (See Joint Mot. at 2). However, plaintiffs acknowledge that they face a risk that they would not prevail on all of their claims if they proceeded to trial. Further, they note that they likely would not be able to collect on a judgment even if they prevailed at trial because the individual defendants are "effectively judgment-proof" because they are no longer owners of Meo, which was closed for a significant amount of time due to the COVID-19 pandemic. (Id.) Lastly, counsel represents that defendants were able to produce documents evidencing that plaintiffs rarely worked in excess of 40 hours per week, and one of the plaintiffs testified in a separate proceeding that he worked fewer hours than he alleged in this case. (Id. at 4). Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing the litigation, and seeing no issues regarding

potential fraud or collusion in this case, the Court finds that the settlement reached is fair and reasonable. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

## IV. Attorney's Fees and Costs

The Second Circuit has set forth six factors to determine whether attorney's fees in FLSA settlements are reasonable: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

Courts employ the "lodestar" method in determining whether attorney's fees are reasonable, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. Cowan v. Ernest Codelia, P.C., 2001 WL 30501, at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

Courts in this Circuit have addressed the issue of applying a multiplier to the lodestar calculation. In one case, the Honorable William H. Pauley III concluded that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases." Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014). In reaching this decision, Judge Pauley examined the case law of this Circuit and noted that courts

11

"have generally refused multipliers as high as 2.03.'" Id. at 438 (quoting In re Currency Conversion, 263 F.R.D. 110, 129 (S.D.N.Y. 2009)); see also Velandia v. Serendipity 3, Inc., No. 16 CV 1799, 2018 WL 3418776, at *5 (S.D.N.Y. July 12, 2018) (finding a multiplier of 1.2 to be a "reasonable lodestar modifier").

Instead of using the lodestar method, courts may employ the "percentage of the fund" method. See McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010). With this method, courts in this Circuit have routinely found an award representing one-third of the settlement amount to be reasonable. Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases). However, a one-third percentage may be "simply too great" in relation to the work performed. Larrea v. FPC Coffees Realty Co., No. 15 CV 1515, 2017 WL 1857246, at *6 (S.D.N.Y. May 5, 2017) (declining to approve a one-third fee that would result in an 11.4 multiplier of the lodestar calculation).

In FLSA cases, regardless of the method used, "'[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined.'" Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d. 362, 366 (S.D.N.Y. 2013)).

Here, plaintiffs' counsel has used the "percentage of the fund" method to seek compensation, including costs, equaling approximately 35% of the total, or $14,701.32. (Final Sett. Agr. ¶ 2(a)). Although a one-third fee is presumptively reasonable in this circuit, the calculated lodestar amount also support approval. Counsel represents that, had plaintiffs been billed hourly, the attorney's fees would amount to $19,247.50. (Joint Mem. at 5; see also ECF No. 57-5 (setting forth plaintiffs' counsel's billing records)). The requested fee amount does not

12

even reach the lodestar amount.  As such, the attorney's fee is reasonable in relation to the settlement amount.  Further, as noted previously, plaintiff's counsel has significant experience representing plaintiffs in wage and hour cases.  (See Joint Mem. at 5-6).  The other Goldberger factors also weigh in favor of finding the award fair and reasonable:  this litigation has been going on for more than four years, the risks of litigation are high, "FLSA claims [such as this case] typically involve complex mixed questions of fact and law," Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys to take on FLSA and NYLL actions that protect the wages of workers is served here.  See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013).

As such, this Court finds that the attorney's fee award is fair and reasonable.

## CONCLUSION

In this case, after holding a fairness hearing and reviewing the parties' submission, the Court finds that the settlement reached is a fair and reasonable compromise of plaintiff's claims, considering the amount received, the issues of damages that might have limited recovery, and the fact that the parties engaged in arms' length negotiations between experienced counsel, sufficient to gain an understanding of the risks and benefits of proceeding with the litigation. Cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d at 335 (examining the factors courts consider when approving FLSA settlement agreements).  The Court also finds that counsel's request for fees and costs is reasonable.

The parties are directed to file a stipulation of dismissal by November 8, 2021.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

13

**SO ORDERED.**

Dated: October 6, 2021
       Brooklyn, New York

                                                 */s/ Cheryl L. Pollak*
                                                 Cheryl L. Pollak
                                                 United States Magistrate Judge
                                                 Eastern District of New York